

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Chris Shelton,

                Plaintiff,

        v.

Hal Hays Construction, Inc., et al.,

                Defendants.

ED CV 16-00360-VAP (KKx)

**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (DOC. NO. 36)**

On December 5, 2016, Plaintiff Chris Shelton filed a Motion for Preliminary Approval of Class Action Settlement, seeking approval of an agreement to settle claims against Defendant Hal Hays Construction, Inc.  (Doc. No. 36.)  Have considered the papers filed in support of the Motion, the Court GRANTS the Motion.

## I.    BACKGROUND

### A.  PROCEDURAL HISTORY

Plaintiff was employed by Defendant as an hourly, non-exempt employee working for the State of California from approximately February 2014 to September 2014.  (Doc. No. 28 at 2.)  When Plaintiff applied for employment with Defendant, Defendant required him to fill out and sign an employment application.  (Id. at 16.)  The application is three pages long and requests personal information from the applicants, including education level, qualifications, employment history, references, and criminal background.  (Doc. No. 28-1.)  In pertinent part, the application contains a series of disclosures on the bottom of the third page, which state:

I authorize THE COMPANY to inquire into my educational, professional and past history references as needed to research my qualifications for this position. I hereby give my consent to any former employer to provide employment-related information about me to THE COMPANY and will hold THE COMPANY and my former employer harmless from any claim made on the basis that such information about me was provided or that any employment decision was made on the basis of such information. I further authorize THE COMPANY to obtain any credit and consumer check.

(Doc. No. 28-1 at 4.)

Plaintiff alleges that because the above "disclosures were embedded with extraneous information" as part of the three-page employment application instead of as a stand-alone document, Defendant willfully violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681(b)(2)(A), as well as related California Civil Code sections 1785 et seq. and 1786 et seq. (Doc. Nos. 36 at 12-13, 28 at 6-24.)

## B. Settlement Class

The settlement agreement between Plaintiff and Defendant defines the settlement class as "any and all individuals who began their employment with Hal Hays during the time period of October 16, 2010 to February 18, 2014, and signed a disclosure form authorizing a background check as part of their employment." (Doc. No. 36-2 at 7.) "According to Defense counsel's representation, there are approximately 360 Class Members." (Id.)

## II.   LEGAL STANDARD

"[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned." Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  When parties reach a settlement before class certification, courts must assess: (1) the propriety of the class certification and (2) the fairness of the settlement.  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).  When reviewing the settlement, the Court should not endeavor to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." City of Seattle, 955 F.2d at 1291.

A court should approve a proposed settlement and give notice to the proposed class where "[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval . . . ." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing Federal Judicial Center, Manual for Complex Litigation § 30.44 (2d ed. 1985)).

### A.   Class Certification

Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23.  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1996).  A court considering such a request should give the Rule 23 certification factors "undiluted, even heightened, attention in the settlement context."  Id.

To bring a class action under Rule 23(a), a plaintiff must demonstrate: (1) the class is so numerous that joinder of all members is impracticable ["numerosity"]; (2) there are questions of law or fact common to the class ["commonality"]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"]; and (4) the representative parties will fairly and adequately protect the interests of the class ["adequacy of representation"].  Fed. R. Civ. P. 23(a).

In addition to these requirements, a plaintiff must satisfy one of the three Rule 23(b) prongs to maintain a class action.  Here, Plaintiff seeks class certification under Rule 23(b)(3).  (Doc. No. 36 at 19.)  Where a plaintiff seeks class certification under Rule 23(b)(3), he or she must prove: "[1] the questions of law or fact common to class members predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### B. Preliminary Approval of Settlement Under Rule 23(e)

Class action settlements must also satisfy the fairness and reasonableness standard of Rule 23(e).  Alberto v. GMRI, Inc., 252 F.R.D. 652, 664 (E.D. Cal. 2008).  Rule 23(e) states: "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Id. The Court must hold a hearing and find that the settlement "is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Review of a proposed settlement generally proceeds in two stages, a hearing on preliminary approval followed by a final fairness

hearing.  See Federal Judicial Center, Manual for Complex Litigation, § 21.632 (4th ed. 2004).

At the preliminary approval stage, a court determines whether a proposed settlement is "within the range of possible approval" and whether or not notice should be sent to class members.  Vasquez v. Coast Valley Roofing, Inc., 670 F. Supp. 2d 1125 (E.D. Cal. 2009); In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1079; In re Corrugated Container Antitrust Litig., 643 F.2d 195, 205 (5th Cir. 1981); Gautreaux v. Pierce, 690 F.2d 616, 621 n. 3 (7th Cir. 1982) (stating the purpose of a preliminary approval hearing is to "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing"); Federal Judicial Center, Manual for Complex Litigation, § 21.632.

## III.   DISCUSSION

### A.   CLASS CERTIFICATION

Plaintiff seeks to certify the settlement class consisting of "any and all individuals who began their employment with Hal Hays during the time period of October 16, 2010 to February 18, 2014, and signed a disclosure form authorizing a background check as part of their employment."  (Doc. No. 36-2 at 7.)

### 1.   Ascertainable Class

Under Rule 23, "[a] class definition should be precise, objective and presently ascertainable," such that it is "administratively feasible to determine whether a particular person is a class member."  Allen v. Hyland's Inc., 300 F.R.D. 643, 658 (C.D. Cal. 2014) (citations omitted) (internal quotation marks omitted).  "The

identity of class members need not, however, be known at the time of class certification." Id.

Here, Plaintiff has "precisely defined the [C]lass[es] based on objective criteria, specifically, [that Defendants employed each Class member as a non-exempt employee] during the [C]lass period[s]." See Hyland's Inc., 300 F.R.D. at 658.  It is "administratively feasible for the Court to determine whether a particular individual or entity is a member of [each] [C]lass . . . .  Evidence such as [wage statements and employment contracts] could be used to identify [C]lass membership.  Moreover, Defendants do not argue that the proposed [C]lass[es] [are] unascertainable." See City of Huntington Park v. Landscape Structures, No. EDCV 14-00419-VAP (DTBx), 2015 WL 3948411, at *4 (C.D. Cal. 2015).  Accordingly, the class is ascertainable.

## 2.  Rule 23(a) Requirements

### i.  Numerosity

Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-14 (9th Cir. 1964).  "Although there is no exact number," courts have repeatedly held classes comprised of "more than forty" members presumptively satisfy the numerosity requirement.  See e.g., DuFour v. BE LLC, 291 F.R.D. 413, 417 (N.D. Cal. 2013) (citing Krzesniak v. Cendant Corp., No. 05-05156 MEJ, 2007 WL 1795703, at *7 (N.D. Cal. June 20, 2007).  "Where the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity

requirement is satisfied." Heffelfinger v. Elec. Data Sys. Corp., No. CV 07-00101 MMM (Ex), 2008 WL 8128621, at *13 (C.D. Cal. Jan. 7, 2008) (citations omitted) (internal quotation marks omitted).

Here, defense counsel represented that "there are approximately 360 Class Members." (Doc. No. 36-2 at 7, 17.) As the class is comprised of "more than forty" members, Plaintiff has met his burden as to numerosity. See DuFour, 291 F.R.D. at 417.

### ii.    Commonality

Commonality "requir[es] a plaintiff to show that 'there are questions of law or fact common to the class.'" Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011) (quoting Fed. R. Civ. P. 23(a)(2)). Even a single common question will suffice. See id. at 359.

Here, Plaintiff raises a single common question that resolves the dispute: "whether Hal Hays willfully violated the law by using these forms[?]" (Doc. No. 36 at 27.) As this question is capable of class-wide resolution, it satisfies the commonality requirement. See Wal-Mart Stores, Inc., 564 U.S. at 359.

### iii.    Typicality

The Ninth Circuit in Hanlon v. Chrysler Corp. explained that "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." 150 F.3d 1011, 1020 (9th Cir. 1998). Thus, to find typicality, a "court does not need to find that the

claims of the purported class representatives are identical to the claims of the other class members." <u>Haley v. Medtronic, Inc.</u>, 169 F.R.D. 643, 649 (C.D. Cal. 1996).

Here, Plaintiff alleges his claims are typical of the class members' claims because "[e]ach Settlement Class Member's claims arise from the same underlying conduct—namely, Hal Hays' failure to use a disclosure form free of extraneous language, in contravention of the FCRA."  Hence, typicality is satisfied.

### iv.   Adequacy of Representation

Finally, "[t]he named Plaintiff[] must fairly and adequately protect the interests of the class." <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 985 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(a)(4)).  To determine whether this requirement has been met, "courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" <u>Id.</u>  In determining adequacy of counsel pursuant to Rule 23(g), the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Here, there is no indication Plaintiff or Class Counsel have any conflicts of interest with other class members.  (Doc. No. 36-1 ¶ 13.)  Furthermore, Class Counsel indicated they conducted significant investigation into potential claims, including meeting with Plaintiff, conducting legal research and analysis of the applicable law as applied to the facts of this case, conducting a study and investigation of the scope and identity of the settlement class, and thoroughly analyzing the evolving and often conflicting case law governing FCRA class actions. (Id. ¶¶ 4-5, 7.)  Class Counsel has experience handling complex litigation and "has been involved as lead or co-lead class counsel in numerous wage and hour, consumer, and antitrust class action cases."  (Id. ¶¶ 13-14.)

Accordingly, both Plaintiffs and Class Counsel have demonstrated their "ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  As Plaintiffs have met all of the Rule 23(a) criteria, the Court turns to the Rule 23(b) requirements.

### 3.      Rule 23(b)(3)

Plaintiff seeks preliminary class certification under Rule 23(b)(3).  (Doc. No. 36 at 30.)  When invoking Rule 23(b)(3), the party seeking class certification bears the burden of showing the following two criteria are met: (1) the questions of law or fact common to members of the class predominate over any questions affecting only individual members and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  See In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 957 (9th Cir. 2009).

### i.      Predominance

"The Rule 23(b)(3) predominance inquiry tests whether classes are sufficiently cohesive to warrant adjudication by representation."  Hanlon, 150 F.3d at 1022.  "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3).  When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  Id.

As discussed above, Plaintiff has demonstrated commonality amongst proposed class members.  No individualized questions predominate, and the factual and legal issues in this case are the same for every class member—that is, whether Defendant willfully violated the law by failing to list the disclosures in its employment application in a stand-alone document.  Plaintiffs, therefore, have demonstrated that common issues predominate over individualized concerns.

### ii.      Superiority

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy."  Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010).  Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.  (Id.)

A class action appears to be superior to other available methods for adjudicating this matter fairly and efficiently.  The amount of statutory damages

available for FCRA violations ranges from $100 to $1,000.  15 U.S.C. § 1681n(a)(1)(A); see also Wolin, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this superiority factor weighs in favor of class certification.") (alteration brackets omitted).  Without class certification, it is unlikely that these claims would be litigated at all.  Hence, Plaintiffs have satisfied Rule 23(b)(3).

Since Plaintiffs have satisfied Rule 23(a) and Rule 23(b), the Court concludes that class certification is proper in this case, and now turns to whether the proposed settlement is fair, adequate, and reasonable under Rule 23(e).

## B.  Fairness, Adequacy, and Reasonableness of the Settlement

"[Rule] 23(e) requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable."  Hanlon, 150 F.3d at 1026.  In determining whether the settlement is fair, adequate, and reasonable, courts balance several factors, including: "[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement."  Id.

The court need not consider all of these factors; rather, it must only consider those factors that are designed to protect absentees.  Molski v. Gleich, 318 F.3d 937,

953 (9th Cir. 2003) <u>overruled on other grounds by</u> <u>Dukes v. Wal-Mart Stores, Inc.</u>, 603 F.3d 571 (9th Cir. 2010).  Moreover, as some of these factors cannot fully be assessed until the Court conducts the fairness hearing associated with the final approval of the settlement, "a full fairness analysis is unnecessary at this stage . . . ." <u>Alberto</u>, 252 F.R.D. at 665 (quoting <u>W. v. Circle K Stores, Inc.</u>, No. CIV. S-04-0438 WBS (GGH), 2006 WL 1652598, at *9 (E.D. Cal. June 13, 2006)).  "[W]hen (as here) the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.'" <u>Lane v. Facebook, Inc.</u>, 696 F.3d 811, 819 (9th Cir. 2012).

### 1.    Arms-length Negotiations

To approve the Settlement at this stage, the Court must find first it is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." <u>Hanlon</u>, 150 F.3d at 1027.  This case was filed on October 15, 2015, and since then, the Parties litigated a motion to dismiss (Doc. No. 10); Class Counsel "thoroughly analyzed the evolving, and often conflicting case law governing FCRA class actions, as well as law governing related statutes" (Doc. No. 36-1 ¶ 7); and the Parties "engaged in extensive, arm's-length negotiations following many contentious discussions (<u>id.</u> ¶ 8).  The Parties' settlement agreement "was the culmination of discussions between the [P]arties following a thorough analysis of the pertinent facts and law at issue," (<u>Id.</u> ¶ 10.), and there is no evidence to suggest the current settlement was the product of collusion.  Thus, this factor weighs in favor of preliminary approval.

### 2.   Strength of Plaintiff's Case and Future Risk[1]

Plaintiff asserts that his claims under the FCRA are strong.  (Doc. No. 36 at 9-10.)  Indeed, there is no dispute that Defendant used employment application forms that included both the disclosure form and a release of liability in one document.  (Id. at 18.)  Hence, Plaintiff contends that the employment applications facially violate the FCRA.  (Id.)  The analysis, however, does not end there.  Plaintiffs, at trial, would have to prove such a violations were "willful," which would make it challenging to prove ultimate liability.  See, e.g. Long v Tommy Hilfiger U.S.A., 671 F.3d 371(3d Cir. 2012) (holding that the defendant was not liable under the Fair and Accurate Credit Transactions Act because its practice was "merely careless" and not a "willful" violation).  Thus, had the Parties not reached the settlement agreement, Plaintiff would have faced the "substantial risk of incurring the expense of a trial without any recovery."  In re Toys 'R' Us FACTA Litig., 295 F.R.D. at 451.

Moreover, the Court may revisit the certification of the class at any time before entry of final judgment.  See Fed. R. Civ. P. 23(c)(1)(C).  Where there is a risk that class certification might not be maintained before entry of final judgment, this factor favors approving the proposed settlement.  See, e.g., Rodriguez v. West Publishing Corp., 563 F.3d 948, 966 (9th Cir. 2009).

---

[1] As the first three Hanlon factors—strength of the Plaintiff's case; the risk, expense, complexity, and likely duration of future litigation; and the risk of maintaining class action status throughout the trial—are interrelated, the Court discusses them together here.

Given the relative strength of Plaintiffs' claims, and the risks and costs associated with future complex litigation, the settlement agreement terms appear to be reasonable. Hence, these factors favor preliminary approval.

### 3.      Extent of Discovery Completed and the Stage of the Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney v. Cellullar Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998).  As noted above, Class Counsel states that they "prosecuted diligently for over a year" by, among other things, meeting with Plaintiff; conducting legal research and analysis of the applicable law as applied to the facts discovered; studying and investigating the scope and identity of the settlement class; reviewing Defendant's background check polices; and "thoroughly analyz[ing] the evolving, and often conflicting case law governing FCRA class actions." (Doc. No. 36-1 at 2-3.)  Further, the class settlement was "the culmination of discussion between the parties following a thorough analysis of the pertinent facts and law at issue." (Id. at 3.)  Accordingly, the Court finds this factor weighs in favor of preliminary approval.  See Linney, 151 F.3d at 1239.

### 4.      The Experience and Views of Counsel

As stated above, Class Counsel has ample experience litigating wage-and-hour class actions similar to this case and hence has demonstrated his ability to prosecute this action vigorously on behalf of the class members.  In its declaration, Class Counsel states that the "settlement is fair, reasonable, and adequate, and in the best interests of the Plaintiff and all members of the classes affected by it." (Doc.

No. 36-1 at 3.)  Accordingly, the Court finds this factor weighs in favor of preliminary approval.

### 5.    Presence of a Governmental Participant and Reaction of the Class Members to the Proposed Settlement

As there is no governmental participant in this action and the Parties have not yet provided notice to the class members, these factors are irrelevant for the purposes of preliminary approval.

### 6.    The Amount Offered in the Settlement

The settlement agreement establishes a fund of $90,000 for the settlement fund, which includes Class Counsel's attorneys' fees of $30,000 and $5,000 in litigation costs, settlement administration costs to Simpluris Inc. in the sum of $8,500, and a class representative service award to Plaintiff Chris Shelton of $4,000. (Doc. No. 36-2 at 9.)  Those deductions leave a total of $42,500 to be distributed equally among participating class members.

For a settlement to be fair and adequate, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." Staton, 327 F.3d at 963.

### i.    Attorneys' Fees

When evaluating attorneys' fees, the Ninth Circuit holds "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir.2002) (citing In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1295–

96 (9th Cir.1994)).  When using the percentage-of-the-fund method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award, and justify any increase or decrease from this amount based on circumstances in the record." Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013); see Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989).  The percentage may be adjusted upward or downward based on (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by the class counsel; and (6) the awards made in similar cases. Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citing Vizcaino, 290 F.3d at 1048–50).

Here, Class Counsel will receive $30,000 from the total $90,000 settlement fund.  (Doc. No. 36-2 at 9.)  As this is 33% of the total settlement fund, it is above the Ninth Circuit's 25% "benchmark award for attorney[s'] fees."  Hanlon, 150 F.3d at 1029.  Thus, before approving the proposed fee, the Court must evaluate it under the factors set forth in Vizcaino.

### Results Achieved

Class Counsel achieved a settlement fund of $90,000.  As noted above, after the attorneys' fees, litigation costs, settlement administration costs, and class representative award are deducted, that leaves only $42,500 for up to 360 class members.  Further, Class Counsel do not appear to have obtained injunctive relief.  Thus, the relatively small settlement amount combined with the lack of any additional relief for class members shows the results achieved were not particularly exceptional.  Accordingly, this factor weighs against a fee award above the 25% benchmark.

*Risks of Litigation*

Class Counsel stressed that if the settlement agreement had not been reached, Plaintiff would have faced "substantial risk of incurring the expense of a trial without any recovery. (Doc. 36 at 12-13 (citing Toys 'R' Us FACTA Litig., 295 F.R.D. at 451.)) They also noted that FCRA litigation is inherently risky because of the potential for changes in case law or statutory enactments that will eliminate liability.

Although Class Counsel did assume some degree of risk by representing Plaintiff, this case does not carry the type of extreme risk that would merit a departure from the 25% benchmark. Compare Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 456–57 (E.D. Cal. 2013) (finding case was not "extremely risky" although it was questionable whether the class could be certified, whether the plaintiff could prove an employer's policies violated labor code sections on a "knew or should have known" standard, and whether plaintiff could overcome an "exhaustion defense"), and Hawthorne v. Umpqua Bank, No. 11-CV-06700-JST, 2015 WL 1927342, at *5 (N.D. Cal. Apr. 28, 2015) (holding the risk in a case did not merit an attorneys' fee award of 33% even though the class counsel "expended a significant amount of time and effort litigating this case over the past three years and undertook a major risk by taking it on a contingency basis."), with Vizcaino, 290 F.3d at 1048 (finding case "extremely risky" when, among other factors, plaintiffs lost twice in district court and there was absence of supporting precedent). Accordingly, this factor weighs against a fee award above the 25% benchmark.

*Skill and Quality of the Work*

As noted above, Class Counsel state that they "are well-experienced class action attorneys" and "have been involved as lead or co-lead class counsel in numerous wage and hour, consumer, and antitrust class action cases." (Doc. 36-1 at 3.)  Moreover, Class Counsel explained that, in litigating the case, they "prosecuted diligently for over a year" by, among other things, meeting with Plaintiff; conducting legal research and analysis of the applicable law as applied to the facts discovered; studying and investigating the scope and identity of the settlement class; reviewing Defendant's background check polices; and "thoroughly analyz[ing] the evolving, and often conflicting case law governing FCRA class actions."  (Id. at 2-3.)

While the Court does not doubt Class Counsel is a skilled litigator, this case presents a simple dispute as to the willfulness of an FCRA violation, with few novel points of law and little distinguishing it from the many others like it.  Propounding discovery requests, interviewing witnesses, and reviewing mass amounts of documents is routine in FCRA class action cases.  Accordingly, Class Counsel has not shown exceptional skill or quality of work to warrant a departure from the 25% benchmark, and this factor weighs against a fee award above the 25% benchmark.

*Contingent Nature of the Fee*

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."  In re Washington Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1299 (9th Cir. 1994).  Thus, whether Class Counsel has taken the case on a contingency fee basis must be considered when deciding to vary from the 25% benchmark.  Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 457

(E.D. Cal. 2013).  Here, Class Counsel provided no information regarding whether this case was taken on a contingency fee basis.  Thus, this factor is at best neutral.

### Awards Made in Similar Cases

Class Counsel has not cited any decisions showing similar cases have approved a 33% attorneys' fee award.  Thus, this factor is at best neutral.

### Burdens Carried by Class Counsel

The settlement agreement allows for an award of out-of-pocket costs incurred in this action in an amount not to exceed $5,000.  (Doc. No. 36-2 ¶ 20.)  Class Counsel have provided no other information as to their expenses.  Further, as discussed above, Class Counsel engaged in discovery and negotiation efforts throughout the case, but such is ordinary in class action litigation.  Thus, Class Counsel has not shown a significant enough burden to justify departing from the 25% benchmark.  Accordingly, this factor weighs against a fee award above the 25% benchmark.

### Lodestar Cross-Check

Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award. Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted. Thus, while the primary basis of the fee award remains the

percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award.

Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002)

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 980 (9th Cir. 2008) (quoting Blum v. Stenson, 465 U.S. 886, 896 (1984)).  Here, Class Counsel provided no information as to the prevailing rates "in the community for similar services by lawyers of reasonably comparable skill."  Further, Class Counsel has given no indication of the amount of hours it spent on this case.  Thus, the Court is unable to cross-check the reasonableness of its percentage award.

*Conclusion*

In sum, four factors weigh against departing from the 25% attorneys' fee award benchmark, and two factors are neutral.  Further, Class Counsel has provided no information allowing the Court to calculate an appropriate Lodestar sum.  Accordingly, the Court does not find the proposed attorneys' fees allocation is reasonable.

### ii.    Costs

According to the proposed settlement agreement, Class Counsel will be reimbursed up to $5,000 out of the settlement fund for costs associated with the

prosecution of the class action.  (Doc. No. 36-2 ¶ 20.)  Though Class Counsel has not attached any accounting of past costs, the request for up to $5,000 in actual costs appears reasonable, especially given the relatively small value of the request compared to the total settlement.  The Court will revisit the cost request at the time final approval of the settlement is sought.

### iii.    Incentive Award

Named plaintiffs "are eligible for reasonable incentive payments."  Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003).  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009).  "The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'"  Staton, 327 F.3d at 977.  Courts may also consider: the risk to the class representative in commencing suit, both financial and otherwise; the notoriety and personal difficulties encountered by the class representative; the amount of time and effort spent by the class representative; the duration of the litigation; and the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.  Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).  "Courts have generally found that $5,000 incentive payments are reasonable."  Alberto, 252 F.R.D. at 669.

Under the proposed settlement agreement, the named Plaintiff will receive up to $4,000.  (Doc. No. 36-2 at 20.)  Class counsel, however, failed to provide any information regarding the "actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation."  Staton, 327 F.3d at 977.  Thus, although an incentive award of $4,000 is generally reasonable, the Court cannot preliminarily approve such an award in a vacuum of evidence.  Accordingly, the Court declines to approve the incentive award.

### iv.    Settlement Administrator Costs

Here, the settlement agreement states a maximum of $8,500 will be deducted from the settlement fund and paid to Simpluris, Inc., the settlement administrator, for the costs of administrating the fund.  (Doc. No. 36-2 ¶¶ 18, 21.)  Simpluris will be charged with administering the settlement fund by establishing a toll-free telephone number and post office box for receipt of class member communications; formatting and printing the class notice packets; distributing the class notice packets; performing skip traces on undeliverable class notice packets; providing Class Counsel and counsel for Defendant with updates on the status of opt outs; calculating claims; and handling inquiries about the calculation of the individual settlement amounts.  (Id. ¶ 59.)  Accordingly, the Court finds the settlement administrator's costs reasonable for the purposes of this motion.

### C.  Notice Procedure

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement.  Fed. R. Civ. P.

23(e)(1).  Plaintiff must provide notice that is "timely, accurate, and informative."
See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989).

### 1.    Notice Form

The Court accepts the proposed notice form. The notice form explains in
plain language what the case is about (Doc. No. 36-3 at 3), what the recipient is
entitled to (id. at 4), and what the class member must do next (id. at 5-6). The
Notice states the class members' options—submit a Claim Form, do nothing, opt
out of the lass, or object to the settlement—and describes the consequences
attached to each decision. (Id. at 5-7.)

### 2.    Claims Administration

The Settlement Agreement states Simpluris will prepare and send the notice
form and issue appropriate claim checks.  The proposed administrative deadlines—
e.g., Defendant shall provide Simpluris with a list of class members within 20 days
of the Preliminary Approval, and Simpluris shall mail the notice form to each
member of the class within 45 days of Preliminary Approval (Doc. No. 36-2 ¶¶ 66,
67)—are reasonable and are approved.  Thus, the Court finds the notice form and
proposed claims administration process adequate.

On the whole, most of the factors considered by the Court favor settlement.
Although the Court declines to approve the proposed incentive award and attorneys'
fees, the proposed settlement is within the range of possible final approval.  As such,
the Court GRANTS the settlement agreement's preliminary approval, except as to
the items noted.

## IV.   CONCLUSION

For the reasons stated above, most of the factors considered by the Court favor settlement.  Although the Court declines to approve the proposed attorneys' fees and incentive award, the proposed settlement is within the range of possible final approval.  The Court, therefore, GRANTS the settlement agreement's preliminary approval, except as to the items noted.

Defendant shall provide a list of all settlement class members to the settlement administrator, Simpluris, within twenty (20) calendar days from the date of this order.

The settlement administrator shall mail the notice form to all settlement class members within forty-five (45) calendar days from the date of this order.

Settlement class members shall have one hundred and five (105) calendar days from the date of this order—that is, sixty (60) calendar days from the date of the notice form mailing deadline—to respond, oppose the settlement, and/or choose to opt-out of the settlement.

Defendants shall ensure that the settlement fund is fully funded by thirty (30) calendar days from the date of Court's final settlement approval.  No later than twenty (20) calendar days after Defendants fund the settlement fund, the settlement administrator shall begin distribution of settlement payments to eligible class members.

The final approval hearing will be conducted within one hundred and thirty (130) calendar days from the date of this order, or at such other time as the Court may order.

**IT IS SO ORDERED.**

Dated:    1/25/17

_____
Virginia A. Phillips
Chief United States District Judge