**United States District Court**
**Central District of California**

Chris Shelton,

                                        Plaintiff,

            v.

Hal Hays Construction, Inc.,

                                        Defendant.

CV 16-00360-VAP (KKx)

**Order Denying Plaintiff's Motion for Final Approval of Class Action Settlement and Attorneys' Fees, Expenses, Settlement Administrator Payment, and Incentive Award [Doc. No. 39]**

      On April 24, 2017, Plaintiff Chris Shelton filed a Motion for Final Approval of Class Action Settlement and Attorneys' Fees, Expenses, Settlement Administrator Payment, and Incentive Award.  (Doc. No. 39.)  After consideration of the papers filed in support of the Motion, the Court DENIES the Motion.

**I. BACKGROUND**

**A.  Procedural History**

      From February 2014 to September 2014, Plaintiff was employed by Defendant Hal Hays Construction, Inc. as an hourly, non-exempt employee working for the State of California.  (Doc. No. 28 at 2.)  Defendant initially required Plaintiff to fill out and sign an employment application.  (Id. at 16.)  The application is three pages long and requests personal information from the applicants, including education level, qualifications, employment history, references, and criminal background.  (Doc. No. 28-1.)  In pertinent part, the application contains a series of disclosures on the bottom of the third page, which state:

I authorize THE COMPANY to inquire into my educational, professional and past history references as needed to research my qualifications for this position.  I hereby give my consent to any former employer to provide employment-related information about me to THE COMPANY and will hold THE COMPANY and my former employer harmless from any claim made on the basis that such information about me was provided or that any employment decision was made on the basis of such information.  I further authorize THE COMPANY to obtain any credit and consumer check.

(Doc. No. 28-1 at 4.)

Plaintiff alleges in his complaint that, as the above "disclosures were embedded with extraneous information" as part of the three-page employment application instead of as a stand-alone document, Defendant willfully violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681(b)(2)(A), as well as related California Civil Code sections 1785 et seq. and 1786 et seq.  (Doc. No. 28 at 6-24.)

On January 25, 2017, the Court granted preliminary approval of the class action settlement, which awarded participating class members a $90,000.00 settlement fund to be distributed after deductions for attorneys' fees, attorney expenses, incentive awards, and settlement administrator costs.  (Doc. No. 38.)  The Court, however, declined to approve the proposed attorneys' fees, cost reimbursement, and incentive awards.  (Doc. No. 38 at 20-21.)  The Court explained that Plaintiff had failed to establish those awards were reasonable.  (Id.)

**B.  Settlement Class**

The settlement agreement between Plaintiff and Defendant defines the settlement class as "any and all individuals who began their employment with Hal Hays during the time period of October 16, 2010[,] to February 18, 2014, and signed a disclosure form authorizing a background check as part of their employment." (Doc. No. 36-2 at 7.)  The settlement administrator, Simpluris, Inc., sent 357 notice forms to potential class members and only two opted out.  (Doc. No. 39-1 at 3-4.)

**C.  Settlement Terms**

Defendant has agreed to a settlement fund of $90,000.00.  (Doc. No. 36-2 at 9.)  Class Counsel seeks an attorneys' fees in the amount of $30,000.00, a $2,026.40 expense reimbursement, an incentive award of $2,500.00,[1] and a settlement administrator payment of $7,500.00—leaving a remainder of $47,973.60 to be distributed among participating class members for an average award of approximately $135.14 per member.[2]  (Doc. No. 39 at 10.)

**II.    DISCUSSION**

**A.  Final Approval of the Settlement**

**1.  Approval of the Settlement Terms**

---

[1] Class Counsel requests two difference amounts for the incentive award in its briefing.  (Doc. No. 39 at 10, 26.)  The Court has chosen to use the $2,500.00 amount in its calculations because it is the more reasonable amount of the two given Plaintiff Shelton's contributions.

[2] This calculation assumes that the 355 class members who have not opted-out are all participating.

United States District Court
Central District of California

Under Rule 23(e) of the Federal Rules of Civil Procedure, "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  A court should approve a settlement pursuant to Rule 23(e) only if the settlement "is fundamentally fair, adequate and reasonable."  Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993); accord In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).

"[T]he settlement may not be the product of collusion among the negotiating parties."  In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 458.  In addition, a court must balance the following factors to determine whether a class action settlement is fair, adequate, and reasonable:

1. the strength of the plaintiff's case;
2. the risk, expense, complexity, and likely duration of further litigation;
3. the risk of maintaining class action status throughout the case;
4. the amount offered in settlement;
5. the extent of discovery completed and the stage of the proceedings;
6. the experience and views of counsel;
7. the presence of a governmental participant; and
8. the reaction of the class members to the proposed settlement.

Torrisi, 8 F.3d at 1375; accord Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998); Hanlon, 150 F.3d at 1026.

The factors are not exclusive, and one factor may deserve more weight than the others depending on the circumstances.  <u>Torrisi</u>, 8 F.3d at 1376.  In some instances, "one factor alone may prove determinative in finding sufficient grounds for court approval."  <u>Nat'l Rural Telecomms. Coop.</u>, 221 F.R.D. at 525–26 (citing <u>Torrisi</u>, 8 F.3d at 1376).

### a.  Non-Collusive Negotiations

To approve the Settlement at this stage, the Court must find first it is "not the product of fraud or overreaching by, or collusion between, the negotiating parties."  <u>Hanlon</u>, 150 F.3d at 1027.  This case was filed on October 15, 2015, and since then, the Parties litigated a motion to dismiss (Doc. No. 10); Class Counsel "thoroughly analyzed the evolving, and often conflicting case law governing FCRA class actions, as well as law governing related statutes" (Doc. No. 39-3 ¶ 7); and the Parties "engaged in extensive, arm's-length negotiations following many contentious discussions (<u>id.</u> ¶ 8).  The Parties' settlement agreement "was the culmination of discussions between the [P]arties following a thorough analysis of the pertinent facts and law at issue," (<u>id.</u> ¶ 10.), and there is no evidence to suggest the current settlement was the product of collusion.  Thus, this factor weighs in favor of final approval.

### b.  Strength of the Plaintiffs' Case and Future Risks[3]

---

[3] As the first three <u>Hanlon</u> factors—strength of the plaintiff's case; the risk, expense, complexity, and likely duration of future litigation; and the risk of maintaining class action status throughout the trial—are interrelated, the Court discusses them together here.

As noted in the Court's preliminary approval order, the strength of Plaintiffs' claims under the FCRA is limited by the requirement that they prove Defendant's alleged violation was "willful."  (Doc. No. 38 at 13 (citing <u>Long v. Tommy Hilfiger U.S.A.</u>, 671 F.3d 371 (3d Cir. 2012).)  Had the Parties not reached the settlement agreement, Plaintiffs would have faced the "substantial risk of incurring the expense of a trial without any recovery."  <u>In re Toys 'R' Us FACTA Litig.</u>, 295 F.R.D. at 451.  In addition, where there is a risk that class certification might not be maintained before entry of final judgment, this factor favors approving the proposed settlement.  <u>See, e.g.</u>, <u>Rodriguez v. West Publishing Corp.</u>, 563 F.3d 948, 966 (9th Cir. 2009).

Given the relative strength of Plaintiffs' claims, as well as the risks and costs associated with future complex litigation, the settlement agreement appears reasonable.  Thus, this factor favors final approval.

### c.  Amount Offered in the Settlement

As noted above, the settlement agreement establishes a settlement fund of $90,000.00.  (Doc. No. 36-2 at 9.)  Class Counsel seeks the following distributions out of the settlement fund before class members receive their awards: attorneys' fees in the amount of $30,000.00, a $2,026.40 expense reimbursement, an incentive award of $2,500.00, and a settlement administrator payment of $7,500.00.  (Doc. Nos. 39 at 10.)  After those distributions, participating class members would be left with a remainder of $47,973.60 to be distributed evenly among them.

For a settlement to be fair and adequate, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement."  <u>Staton</u>, 327 F.3d at 963.  As discussed in more detail below, the

United States District Court
Central District of California

attorneys' fees request in this case is unreasonable.  As the individual distributions to each participating class member depend upon the size of the attorneys' fees award, the Court finds that the amount offered in the settlement weighs against final approval.

### d.  Extent of Discovery Taken in the Case

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement."  Linney v. Cellullar Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998).  As noted above, Class Counsel states that they "prosecuted diligently for over a year" by, among other things, meeting with Plaintiff; conducting legal research and analysis of the applicable law as applied to the facts discovered; studying and investigating the scope and identity of the settlement class; reviewing Defendant's background check polices; and "thoroughly analyz[ing] the evolving, and often conflicting case law governing FCRA class actions."  (Doc. No. 39-3 at 2-3.)  Further, the class settlement was "the culmination of discussion between the parties following a thorough analysis of the pertinent facts and law at issue."  (Id. at 3.)  The Court, therefore, finds this factor weighs in favor of final approval.  See Linney, 151 F.3d at 1239.

### e.  Experience and Views of Counsel

As noted in the preliminary approval order, Class Counsel has ample experience litigating wage-and-hour class actions similar to this case and has demonstrated his ability to prosecute this action vigorously on behalf of the class members.  (Doc. No. 39-3 at 4-5.)  In its declaration, Class Counsel states that the "settlement is fair, reasonable, and adequate, and in the best interests of the Plaintiff

United States District Court
Central District of California

and all members of the classes affected by it."  (Id. at 3.)  Accordingly, the Court finds this factor weighs in favor of final approval.

### f.  Presence of a Governmental Participant

There is no governmental participant in this action.  Thus, this factor is irrelevant for the purposes of final approval.

### g.  Reaction of Class Members to the Settlement

The settlement administrator mailed notices to 357 class members.  (Doc. No. 39-1.)  Of those notices, only two class members requested to opt-out and none objected to the settlement.  Where "the overwhelming majority of the class willingly approved the offer and stayed in the class," there is "at least some objective positive commentary as to its fairness."  Hanlon, 150 F.3d at 1027.  This factor, therefore, favors final approval of the settlement.

### h. Balance of Factors

Although several factors favor final approval, the current attorneys' fees request—discussed in more detail below—prevents the Court from determining that the settlement agreement is fair, reasonable, and adequate.  Accordingly, the Court denies final approval.

### 2.  Approval of Notice Procedures

Rule 23 requires the Court to direct to Class Members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In addition, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to

all class members who would be bound by the proposal."  The notice must explain in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and binding nature of a class judgment.  Fed. R. Civ. P. 23(c)(2)(B).  Plaintiffs must provide notice to potential opt-in class members that is "timely, accurate, and informative."  See Hoffmann-La Rouche Inc. v. Sperling, 493 U.S. 165, 172 (1989).  Likewise, claim forms must be informative and accurate.  Id. at 172; Churchill Village, L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard").

The Court previously accepted the proposed notice form and administration procedures.  (Doc. No. 38 at 22-23.)  According to Stephen Gomez, a Case Manager for the settlement administrator, notice was disseminated through procedures that were in conformity with the Court's preliminary approval order.  (See generally Doc. No. 39-1.)  Given Gomez's representations, the Court finds that the Notice was reasonable as to its content and the method of communication.

**B. Attorneys' Fees, Costs, Incentive Award, and Settlement Administration Costs**

Class Counsel requests final approval of the attorneys' fees, costs, incentive award, and settlement administrative expenses.  The Court addresses each in turn below.  Staton v. Boeing Co., 327 F.3d 938, 963 (9th Cir. 2003) ("[T]o avoid abdicating its responsibility to review the agreement for the protection of the class,

United States District Court
Central District of California

a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement.").

### 1. Attorneys' Fees

Notwithstanding an explicit agreement to shift attorneys' fees in a certified class action, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

Under both California and Ninth Circuit precedent, a court may exercise discretion to award attorneys' fees from a common fund by applying either the lodestar method or the percentage-of-the-fund method. Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224, 253 (2001); Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002). "Irrespective of the chosen method, 'the district court should be guided by the fundamental principle that fee awards out of common funds be 'reasonable under the circumstances.'" Alberto v. GMRI, Inc., 252 F.R.D. 652, 667 (E.D. Cal. 2008), citing In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1295 (9th Cir. 1990).

Plaintiffs seek to employ the percentage-of-the-fund method, whereby Class Counsel requests $30,000.00—or one-third[4]—of the $90,000.00 settlement fund for attorneys' fees. When using the percentage-of-the-fund method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award, and justify any

---

[4] Class Counsel incorrectly refers to the amount as 30% of the settlement fund throughout its briefing. (See Doc. No. 39 at 24.)

United States District Court
Central District of California

increase or decrease from this amount based on circumstances in the record."
Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013); see
also Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989).
The percentage may be adjusted upward or downward based on (1) the results
achieved; (2) the risks of litigation; (3) the skill required and the quality of work;
(4) the contingent nature of the fee; (5) the burdens carried by the class counsel; and
(6) the awards made in similar cases. Monterrubio v. Best Buy Stores, L.P., 291
F.R.D. 443, 455 (E.D. Cal. 2013) (citing Vizcaino, 290 F.3d at 1048–50).  The Court
addresses these factors, in turn, below.

### Results Achieved

As noted above, after the attorneys' fees, litigation costs, settlement
administration costs, and class representative award are deducted, only $47,973.60
will remain to be distributed between what appears to be 355 participating class
members.  The ultimate result, therefore, is an award of approximately $135.14 per
participating class member.  Such an award would be at the low end of statutory
damages for FCRA violations, which range from $100 to $1,000.  15 U.S.C. §
1681n(a)(1)(A).  Further, Class Counsel do not appear to have obtained injunctive
relief.  Thus, the relatively small settlement amount combined with the lack of any
additional relief for class members shows the results achieved were not particularly
exceptional.  Accordingly, this factor weighs against a fee award above the 25%
benchmark.

### Risks of Litigation

Class Counsel argues that if the settlement agreement had not been reached,
Plaintiff would have faced "substantial risk of incurring the expense of a trial
without any recovery.  (Doc. 39 at 20 (citing Toys 'R' Us FACTA Litig., 295 F.R.D.

at 451.)) They also note that FCRA litigation is inherently risky because of the potential for changes in case law or statutory enactments that will eliminate liability.

As noted in the preliminary approval order, although Class Counsel did assume some degree of risk by representing Plaintiff, this case does not carry the type of extreme risk that would merit a departure from the 25% benchmark. Compare Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 456–57 (E.D. Cal. 2013) (finding case was not "extremely risky" although it was questionable whether the class could be certified, whether the plaintiff could prove an employer's policies violated labor code sections on a "knew or should have known" standard, and whether plaintiff could overcome an "exhaustion defense"), and Hawthorne v. Umpqua Bank, No. 11-CV-06700-JST, 2015 WL 1927342, at *5 (N.D. Cal. Apr. 28, 2015) (holding the risk in a case did not merit an attorneys' fee award of 33% even though the class counsel "expended a significant amount of time and effort litigating this case over the past three years and undertook a major risk by taking it on a contingency basis"), with Vizcaino, 290 F.3d at 1048 (finding case "extremely risky" when, among other factors, plaintiffs lost twice in district court and there was absence of supporting precedent). Accordingly, this factor weighs against a fee award above the 25% benchmark.

*Skill and Quality of the Work*

As noted in the preliminary approval order, while the Court does not doubt Class Counsel are skilled litigators, this case presents a simple dispute as to the willfulness of an FCRA violation, with few novel points of law and little distinguishing it from the many others like it. Propounding discovery requests, interviewing witnesses, and reviewing mass amounts of documents is routine in

FCRA class action cases.  Moreover, the Class Counsel's lodestar figures reflect that a junior attorney, Farrah Grant, was responsible for over 60% of the total hours billed in this case.[5]  (Doc. No. 39-3 at 7.)  For those reasons, Class Counsel has not shown exceptional skill or quality of work to warrant a departure from the 25% benchmark.

### Contingent Nature of the Fee

Class Counsel took this case on a contingent fee basis.  The Ninth Circuit, however, "has suggested the distinction between a contingency arrangement and a fixed fee arrangement alone does not merit an enhancement from the benchmark."  Richardson v. THD At-Home Servs., Inc., No. 1:14-cv-0273-BAM, 2016 WL 1366952, at *9 (E.D. Cal. Apr. 6, 2016) (citing In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 942 n.7 (9th Cir. 2011)).  Accordingly, the Court will treat this factor as neutral.

### Awards Made in Similar Cases

Class Counsel has not cited any decisions showing similar cases have approved a 33.3% attorneys' fee award.  Thus, this factor is neutral at best.

### Burdens Carried by Class Counsel

Class Counsel seeks a $2,026.40 expense reimbursement.  (Doc. Nos. 39 at 10.)  Such relatively small expenses do not justify a departure from the benchmark. Moreover, the lodestar figures show that Class Counsel spent less than 76 hours in total on this case.  (Doc. No. 39-3 at 7.)  Such a low time expenditure likewise does

---

[5] Grant worked 45.60 hours of the total 75.75 hours billed on this case.  (Doc. No. 39-3 at 7.)

United States District Court
Central District of California

not justify a departure from the benchmark.  Thus, Class Counsel has not shown a significant burden to justify departing from the 25% benchmark.

*Lodestar Cross-Check*

> Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award.  Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable.  Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted.  Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award.

Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002)

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 980 (9th Cir. 2008) (quoting Blum v. Stenson, 465 U.S. 886, 896 (1984)).  Here, Class Counsel provided the Court with an affidavit stating the total hours worked and the proposed billing rates of each attorney involved in the case.  Class Counsel, however, provided no information as to the prevailing rates "in the community for similar services by lawyers of reasonably comparable skill" to justify the proposed

United States District Court
Central District of California

14

billing rates for each attorney.  Id.  Nor did Class Counsel provide the court with detailed logs explaining how the attorneys' hours were spent.  Without such information, the Court is wholly unable to cross-check the reasonableness of the percentage award using the lodestar method.[6]  Thus, the Lodestar information provided by Class Counsel does not justify a departure from the benchmark.

*Conclusion*

In sum, four factors weigh against departing from the 25% benchmark and two factors are neutral.  Further, Class Counsel has not produced satisfactory Lodestar evidence to establish that the requested rates are in line with those prevailing in the community for similar services.  For those reasons, the Court finds that the facts of this case do not present the type of "unusual circumstances" required to justify a departure from that benchmark.  Paul, Johnson, Alston & Hunt v. Graulty, 866 F.2d 268, 272 (9th Cir. 1989).  The Court, therefore, declines to grant final approval to a settlement awarding attorneys' fees greater than 25% of the settlement fund.

**2. Class Counsel Expenses**

Class Counsel seeks a $2,026.40 expense reimbursement.  (Doc. Nos. 39 at 10.)  Class Counsel has not submitted a detailed accounting as to any of those expenses.  Thus, the Court declines to approve the expense reimbursement request.

---

[6] Even if Class Counsel were to submit more detailed information, the Court would be highly unlikely to grant a departure from the benchmark given that rates proposed by Class Counsel appear unreasonable due to the minimal amount of time and skill required to resolve this relatively straightforward case.

### 3. Incentive Award

Named plaintiffs "are eligible for reasonable incentive payments." <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 977 (9th Cir. 2003).  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." <u>Rodriguez v. W. Publ'g Corp.</u>, 563 F.3d 948, 958–59 (9th Cir. 2009).  "The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" <u>Staton</u>, 327 F.3d at 977.  Courts may also consider: the risk to the class representative in commencing suit, both financial and otherwise; the notoriety and personal difficulties encountered by the class representative; the amount of time and effort spent by the class representative; the duration of the litigation; and the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. <u>Van Vranken v. Atl. Richfield Co.</u>, 901 F. Supp. 294, 299 (N.D. Cal. 1995).  "Courts have generally found that $5,000 incentive payments are reasonable." <u>Alberto</u>, 252 F.R.D. at 669.


As noted above, Class Counsel requests two different amounts for an incentive award for Plaintiff Shelton in its briefing—first stating it seeks only $2,500.00 but later requesting $4,000.00.  (Doc. No. 39 at 10, 26.)  Shelton submitted a declaration stating that he assisted with the prosecution of this case by providing counsel information about Defendant's policies and practices, participated in the mediation preparation, and reviewed the settlement as well as

16

"other case-related documents."  (Doc. No. 39-2 at 2-3.)  Given Shelton's level of involvement and the relatively small settlement fund, the Court finds that a $2,500.00 incentive award is appropriate in this case.

### 4. Settlement Administrator Costs

Class Counsel seeks $7,500.00 be deducted from the settlement fund and paid to the settlement administrator for the costs of administrating the settlement notice and distributions of the fund.  As the Court already determined the administrator's costs were reasonable in the preliminary approval order—then projected at $8,500.00—it again finds this payment reasonable.

### III.    CONCLUSION

For the reasons stated above, the Court DENIES the motion for final approval and for attorneys' fees, expenses, incentive award, and settlement administrator payment without prejudice.

**IT IS SO ORDERED.**

Dated:      6/1/17

_____
                         Virginia A. Phillips
                         Chief United States District Judge

United States District Court
Central District of California

17